## TOWN OF BARRE AS SCHOOL DISTRICT

### v.

## SCHOOL DISTRICT NO. 13 IN BARRE.

### May Term, 1894.

*Adoption of town system of schools.   Who is entitled to funds of school districts when abolished.*

1.  A school district is a political division created by the state to carry out its policy to educate its youth, and holds any funds coming to it for that purpose as a trustee.

2.  The state may change the territorial limits of school districts at will, and such change simply amounts to a change of trustees.

3.  So when the Legislature by Nos. 20 and 21, Acts of 1892, abolished existing school districts, and made each town a district charged with the education of its youth, the town became entitled to the funds held by the districts for gen-

eral educational purposes, and to any taxes assessed, but not collected.

4. The collection of uncollected taxes would be a settlement of its pecuniary affairs for which the existence of the district is continued by said acts.

Assumpsit. Heard upon an agreed statement of facts at the March term, 1894, Washington county, TYLER, J., presiding. Judgment *pro forma* for the defendant. The plaintiff excepts.

*John W. Gordon* and *Barney & Hoar* for the plaintiff.

The legislature has supreme control over the funds of municipalities. *Montpelier* v. *East Montpelier*, 29 Vt. 12; 1 Dill., Mun. Cor., ss. 66, 187; *Laramie County* v. *Albany County*, 92 U. S. 307; Cool., Const. Lim., 192; 1 Greenl., Ev., (4th Ed.), s. 331; *Darlington* v. *New York*, 31 N. Y. 164; *Railroad Co.* v. *Ellenan*, 105 U. S. 166.

When a municipality is abolished and no provision made as to its funds, they belong to its successor. 1 Dill., Mun. Cor., s. 186; *Mount Pleasant* v. *Beckwith*, 100 U. S. 514; *School District* v. *Tapley*, 1 Allen 49; *Stoneham* v. *Richardson*, 23 Pick. 68; *Thompson* v. *Abbott*, 61 Mo. 176.

Funds collected by school districts for school purposes are held in trust for the state. *Stoneham* v. *Richardson*, 23 Pick. 62, 69; *Ford* v. *School Dist., Kendall Burrough*, 1 L. R. A., 607; *School Dist.* v. *Bridport*, 63 Vt. 383, 390; *Indiana ex rel.* v. *Waworth*, 7 L. R. A., 240; *East Hartford* v. *The Hartford Bridge Co.*, 10 How., 511; *Willimantic School Soc.* v. *First School Soc.*, 14 Conn. 456.

*W. A. & O. B. Boyce* for the defendant.

The funds in the hands of the school district belong neither to the town nor the district, but to the taxpayers of the district. *School Dist. No. 1* v. *Bridport*, 63 Vt. 383.

ROSS, C. J.   In this action the town of Barre, in its capacity as a school district, seeks to recover from school district No. 13, in Barre, four hundred sixty-six dollars and fifty-seven cents, and what may be realized from two hundred dollars uncollected taxes.   To recover the latter, except for the agreement of the parties, this form of action, assumpsit in the common counts, would not be applicable. The case has been made up and the facts agreed upon, including the uncollected taxes, to enable the parties tò obtain the opinion of this court, with reference to the relative rights of the parties to the fund in controversy.   Prior to the passage of acts numbered 20 and 21, of the Laws of 1892, the defendant had been a school district in the town of Barre. These acts took effect April 1, 1893.   The defendant then had money collected by tax duly assessed upon the inhabitants of the district for defraying current expenses, and the payment of the indebtedness of the district, to the amount of one hundred fifty-three dollars and twelve cents, and there was still an amount of two hundred dollars of this tax uncollected.   It also had in money three hundred thirteen dollars and forty-five cents, received from the town on the division of the public school money.   It was indebted eleven hundred dollars for the land on which its schoolhouse stood, and for erecting and repairing its schoolhouse.   The defendant claims the right to return the four hundred sixty-six dollars and fifty-seven cents to the taxpayers in the district *pro rata*, and to have the residue of the tax uncollected.   The plaintiff claims this fund, including as well what the defendant can realize from the uncollected taxes to be used in the town for school purposes.   As early as 1797 the legislature provided that every town should maintain one or more schools therein for the instruction of the young.   The town was given power to divide its territory into such a number of school districts as it might deem necessary to furnish the required instruction.   Each school district became a cor-

poration.   Its sole power and function were to provide the
required instruction to the young of all classes.   Only for
that purpose could it assess taxes.   The Acts of 1892 de-
clare that all such school districts shall no longer exist "ex-
cept for the settlement of their pecuniary affairs," and con-
stitute each town into a single district for school purposes.
These acts contain no specific provision in regard to the set-
tlement of such pecuniary affairs.   They provide that the
town shall take charge of all the school buildings and school
property, and assume and pay all debts outstanding incurred
for the purchase of land, and the erection and repair of
schoolhouses.

   The money which the defendant had April 1, 1893, com-
ing from its own tax and what it should realize from the un-
collected taxes, had by law and the vote of the district been
appropriated to defraying its current expenses, and to the
payment of its indebtedness.   It belonged to the defendant,
and not to its taxpayers, to be used for these purposes.   The
defendant held it, and had the right to the uncollected por-
tion of the tax for these purposes, and for these purposes
only.   It was a trustee, created by law, for the accomplish-
ment of a state purpose, and for the execution of the policy
of the state of educating all the youth of its inhabitants.
The three hundred thirteen dollars and forty-five cents,
which it received from the town as its portion of the public
money, had been devoted and set apart by law to the accom-
plishment of the same purpose.   It held this in trust for
school purposes.   It came from the interest on the United
States deposit money and the Huntington fund, and from
the state tax and town school fund.   The whole fund in
controversy, under various laws, was devoted to the purpose
of maintaining public schools.   The defendant had been
constituted a trustee by law, and held the fund for this sin-
gle purpose.   It could not lawfully divert it from such pur-
pose.   *Howe* v. *School District*, 43 Vt. 282.   On April 1,

1893, the defendant ceased to be such trustee. It only had power left to settle its pecuniary affairs. This empowered it to finish the collection of the existing tax. Its power further to carry on the purpose to which these funds were devoted was taken away. To still carry on this state purpose the town was constituted a single school district. The purpose for which this money had been raised, and to which it had been devoted, is a continuing state purpose. What might have been the right of the district to return this fund to the taxpayers if the state had abandoned, and had no longer continued and enforced the policy of educating all its youth, is not presented, and need not be considered. It is still the policy of the state to educate all its youth. They are still its beneficiaries. It needs, to carry forward this purpose, all the money which has been devoted to it. The defendant, a legal entity, created by law to carry forward this state purpose, though compelled by the state to create part of the fund in controversy, has no right, no power to divert any of it from the purpose to which the law has devoted it. By Acts 20 and 21, of the Laws of 1892, the legislature has provided that the defendant shall cease to exercise the function of a public educational trustee, and the town is created such public trustee, charged with the duty and given the power to carry on the trust. It has become the legal successor and trustee in place of all the school districts into which, under the law theretofore, it had divided its territory. This is not a case where the legislature, as in *Montpelier* v. *East Montpelier*, 27 Vt. 704, and 29 Vt. 12, has dissolved one entity charged with a trust duty without providing another trustee to carry forward and administer the trust, so that a court of equity must needs be resorted to to appoint the trustee. Here the legislature has created the successor, and the work of the trust is being carried forward by it. The education of its youth is a state work, created, controlled and enforced by public laws. It follows necessarily that the

legislature has the right and power to determine when, how and by whom its work shall be carried on ; to change the agencies it has created ; and to control and direct the expen-diture of any unexpended fund it has caused to be raised for such purpose. So are the decisions. *Mount Pleasant* v. *Beckwith*, 100 U. S. 514 ; *Stoneham* v. *Richardson*, 23 Pick. 62 ; *City of Winona* v. *School District No. 82*, 40 Minn. 13 (12 Am. St. R. 687) ; *Williams* v. *School District*, 33 Vt. 271 ; *School District* v. *Concord*, 64 N. H. 235 ; *School District* v. *Greenfield*, 64 N. H. 84. Unless controlled by the act of the legislature making the change, the newly created trustee generally takes the trust fund in the hands of its predecessor, whose function to carry on the trust has been taken away. The legislature in making the change, has made no specific provisions in regard to trust funds left unexpended by the old school districts. The right to expend the funds on hand and those which may be real-ized from the uncollected portion of the existing tax, is taken from the defendant. That right has passed to its successor, the plaintiff. Hence, the plaintiff is entitled to recover the fund in hand and what the defendant may realize from the tax which remains uncollected. The power reserved to the defendant, "for the settlement of its pecuniary affairs," gives it the right to enforce the collection of the remainder of the outstanding tax. When it has completed the collection of this tax and paid the fund then in hand over to the plaintiff, its function will be performed, and, under the terms of the act, it will cease to exist. Inasmuch as the amount which it will, or should, receive from the collection of the outstand-ing tax cannot now be ascertained, the case must go back to the county court to have that sum ascertained in accordance with the understanding of the parties.

*Judgment reversed and cause remanded, to be proceeded with according to the views herein expressed, without costs, as stipulated.*